**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x

    NATHAN CULPEPPER,             :

                    **Plaintiff,**   :

                             :

        -against-                 :       **1:14-cv-06585 (ALC)**

                             :

    THE CITY OF NEW YORK, et al.,     :       <u>**OPINION & ORDER**</u>

                  **Defendants.**  :

                             :

-------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

    Plaintiff charges Defendants with violations of his civil rights pursuant to 42 U.S.C. §

1983 under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments; violations of his Fourth

and Fourteenth Amendment rights to be free from unreasonable seizure and deprivations of

liberty; false arrest and false imprisonment; failure to intervene; denial of the constitutional right

to a fair trial; malicious prosecution; and policy or custom violations under *Monell*. Defendants

have filed a motion to dismiss this case. Plaintiff did not file a response. For the reasons that

follow, Defendants' motion is GRANTED.

**BACKGROUND**

**I.  Factual Background**

    The following facts are taken from Plaintiff's Third Amended Complaint ("TAC") and

are presumed true for the purposes of this motion to dismiss. Around 10 p.m. on or about July

22, 2011, Plaintiff was in his apartment, then located at 988 East 180th Street in the Bronx, with his girlfriend, two children, and sister-in-law. TAC ¶ 14 (ECF No. 88). At some point, Plaintiff and Gerard Jones, an acquaintance of his sister-in-law, got into an argument. *Id.* ¶ 15. Jones pulled a gun on Plaintiff. *Id.* The two men struggled for a gun, and two shots were fired. *Id.* Subsequently, Jones left the apartment and fired two shots into the apartment from the street. *Id.* These shots left two gunshot holes in Plaintiff's living room window. *Id.* ¶ 16.

Detective Henn ("Henn") and other police officers ("Defendant Officers") sought to arrest Plaintiff for this incident. *Id.* ¶ 17. According to the complaint, during the ensuing days the Defendant Officers told Plaintiff's family that he would be "shot on sight" and that his children would be taken away if he did not turn himself in. *Id.* ¶¶ 18; 34.

Due to this threat, on August 18, 2011, Plaintiff turned himself in to the 50th precinct. *Id.* ¶ 19. Defendant Officers handcuffed and arrested him. *Id.* Henn then transported Plaintiff to the 48th Precinct to formally process his arrest. *Id.* ¶ 20. Plaintiff was subsequently transferred to Bronx Central Booking. *Id.* ¶ 21.

During the daytime hours of August 19, 2011, Plaintiff was arraigned. *Id.* ¶ 22. According to the complaint, Plaintiff had not committed any crime and Defendant Officers arrested and detained him despite lacking any probable cause or reasonable belief that Plaintiff had committed a crime. *Id.* ¶¶ 23-26. Nevertheless, Henn arrested Plaintiff for attempted murder and assault, among other charges. *Id.* ¶ 26. As a result, Plaintiff was incarcerated for nearly three months, until November 1, 2011. *Id.* ¶ 27. Plaintiff lost his job and apartment

during his imprisonment. *Id.* On March 1, 2012, all charges against Plaintiff were dismissed. *Id.* ¶ 28.

Henn, along with Sergeant Christ Cesarz ("Cesarz") and Detective Martin ("Martin") and other Defendant Officers investigated the shooting that led to Plaintiff's arrest. *Id.* ¶¶ 29, 31. Plaintiff alleges that Jones gave these officers "false information," namely, that he was attacked by "two unknown male suspects." *Id.* ¶ 31. The officers had been informed that Jones was a "neighborhood drug dealer" who had multiple prior arrests, that he had conflicting stories, and that he was an unreliable witness to these events. *Id.* ¶¶ 32-33.

During the investigation, Defendant Officers allegedly withheld exculpatory information from police supervisors and the district attorney's office. *Id.* ¶ 36. Chiefly, the officers did not disclose the fact that gun shots were fired from the street into Plaintiff's apartment. *Id.* Defendant Officers allegedly learned this information while visiting Plaintiff's apartment during their investigation. *Id.* ¶ 37. However, they dismissed the bullets as "bullets from a BB Gun.'" *Id.* According to Plaintiff, the district attorney's file reveals the fact that the full investigation, including exculpatory information, was not communicated to the district attorney's office. This is because the file does not contain any mention of shots being fired from outside the apartment, bullet holes in the living room window, photos from the crime scene, a witness statement from Plaintiff's girlfriend, who was present during the incident, or mention of statements by Defendant Officers to Plaintiff's family. *Id.* ¶ 36-37.

Nevertheless, Henn, Martin, Cesarz, and the other officers prepared a criminal complaint and "other police documents" that "created a false, incomplete and misleading account of the

events to justify the false arrest and imprisonment" of Plaintiff. *Id.* ¶¶ 35, 41. The officers did so "despite receiving conflicting stories about the events that took place on July 22, 2011 and having exculpatory evidence and contradictory witness statements." *Id.* ¶ 35.

This Court notes that Jones swore out a criminal complaint on August 18, 2011. ECF No. 101-2 ("Criminal Complaint"). According to the complaint, Defendant attacked Jones with a firearm. *Id.* at 2.

As a result of his arrest and imprisonment, Plaintiff sustained psychological and emotional trauma, lost wages, and future income potential. *Id.* ¶ 40.

## II. Procedural Background

Plaintiff filed the complaint commencing this action against the City of New York and Police Officers John Does #1-4 on August 18, 2014. (ECF No. 1.) Plaintiff's complaint alleged violations of his Fourth and Fourteenth Amendment rights, false arrest and false imprisonment, and failure to intervene. *Id.* Plaintiff amended his complaint against the same defendants on November 12, 2014, adding a claim for denial of the constitutional right to a fair trial. (ECF No. 8.) On February 24, 2015, Plaintiff filed a Second Amended Complaint naming Henn and adding a cause of action for malicious prosecution and a *Monell* claim. (ECF No. 23.)

On January 4, 2016, Defendants filed a motion for partial summary judgment and to dismiss certain claims. (ECF No. 38.) The motion was fully briefed and on September 21, 2016, this Court dismissed without prejudice Plaintiff's *Monell* claims and granted summary judgment as to Plaintiff's malicious prosecution and fair trial claims against Henn. The Court denied summary judgment as to Plaintiff's false arrest claim against Henn.

Plaintiff filed a third amended complaint on July 8, 2017, which additionally named Cesarz and Martin. (ECF No. 88.) This is the operative complaint. Defendants filed an amended answer on August 29, 2017 (ECF No. 98) and a motion to dismiss pursuant to Fed. R. Civ. P. 12(c) on September 1, 2017. (ECF Nos. 99-101.) Plaintiff's response was originally due by September 15, 2017. (ECF No. 95.) Between September and December 2017, Plaintiff requested, and received, six extensions of time to file his response. (*See* ECF Nos. 102-116.) Following his last motion for an extension, Plaintiff's response was due by December 21, 2017. (ECF No. 116.) Plaintiff did not file his response.

On December 27, 2017, Defendants filed a letter motion requesting that the Court deem the motion fully briefed since Plaintiff failed to file his opposition papers by the Court-ordered deadline. (ECF No. 117.) On January 8, 2018, this Court issued an order for Plaintiff to show cause by January 16, 2018 why Defendants' motion to dismiss should not be considered fully briefed. (ECF No. 118.) The Order informed Plaintiff that, "[i]n the absence of any filing by [January 16, 2018], the motion to dismiss will be deemed fully briefed." *Id.* To date, Plaintiff has not responded to the Order to Show Cause or filed a response in this matter. Accordingly, the Court deems the motion fully submitted.

## LEGAL STANDARD

"The same standard applicable to Fed.R.Civ.P. 12(b)(6) motions to dismiss applies to Fed.R.Civ.P. 12(c) motions for judgment on the pleadings." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) (citation omitted). In adjudicating a Rule 12(c) motion, "the court considers 'the complaint, the answer, any written documents attached to them, and any

matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). The complaint "'is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint.'" *Id.* (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)).

When deciding a motion to dismiss, the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Claims should be dismissed when a plaintiff has not pled enough facts that "plausibly give rise to an entitlement for relief." *Id.* at 679. A claim is plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). While not akin to a "probability requirement," the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Accordingly, where a plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To state a claim under § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law; and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999). A complaint under § 1983 "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987) (citations omitted).

## DISCUSSION

### I. False Arrest and False Imprisonment[1]

Plaintiff alleges that Defendant Officers violated his Fourth Amendment right to be free from unreasonable seizure (i.e. false arrest) and his Fourteenth Amendment right to be free from deprivations of liberty (i.e. false imprisonment) when they arrested him without probable cause and incarcerated him.[2] Defendants assert that Plaintiff's claims are barred by the statute of limitations and, in any event, Plaintiff fails to state a claim.

### A. Statute of Limitations

---

[1] Plaintiff's first cause of action raises violations of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights under § 1983. TAC ¶¶ 42-47. Plaintiff provides no factual basis or explanation for any violations of his First, Fifth, or Eighth Amendment rights. Any such claims are dismissed for failure to state a claim. Plaintiff's Fourth and Fourteenth Amendment claims are discussed under "False Arrest and False Imprisonment."

[2] Plaintiff raises separate causes of action for (1) Fourth and Fourteenth Amendment violations and (2) False Arrest and False Imprisonment. *See* TAC ¶¶ 48-57. The factual bases for both claims are Plaintiff's allegedly unlawful arrest and imprisonment by Defendant Officers. Accordingly, the Court considers both causes of action together. In any event, to the extent Plaintiff raised claims under New York law, such claims are likewise dismissed. *See Jenkins v. City of N.Y.*, 478 F.3d 76, 84 (2d Cir. 2007) (citation omitted) ("A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law.").

Since § 1983 does not provide a specific statute of limitations, "courts apply the statute of limitations for personal injury actions under state law." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (citations omitted). "Section 1983 actions filed in New York are therefore subject to a three-year statute of limitations." *Id.* (citing *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002)); N.Y. C.P.L.R. § 214. The accrual date for a § 1983 action, however, is "a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato,* 549 U.S. 384, 388 (2007). Instead, it is governed by "federal rules conforming in general to common-law tort principles." *Id.* (citations omitted). Under those principles, "the standard rule is that [accrual occurs] when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (citations omitted).

"[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Id.* at 396; *see also Martinez v. City of N.Y.*, 476 F. Supp. 2d 330, 331 (S.D.N.Y. 2007) (applying *Wallace* to false imprisonment claim). An individual is detained pursuant to legal process "when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace*, 549 U.S. at 389 (citations omitted).

Generally, "'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." *Hogan*, 738 F.3d at 517 (internal citations and quotation marks omitted). Nevertheless, if a complaint is amended to include a named defendant after the statute of limitations has run,

8

the claims are timely if "(1) they relate back to the original complaint, or (2) the three-year limitations period was somehow tolled." *Kelly v. City of N.Y.*, No. 15-cv-53, 2017 WL 3107207, at *2 (S.D.N.Y. July 17, 2017).

Here, Plaintiff was arraigned on August 19, 2011. TAC ¶ 22. Accordingly, the statute of limitations period for his false arrest and false imprisonment claims began running that day. The statute of limitations expired on August 19, 2014. Plaintiff filed his initial complaint against the City of New York and numerous "John Doe" defendants on August 18, 2014, one day before the statute of limitations expired. (ECF No. 1.) Accordingly, claims against the City are timely.

However, Plaintiff did not name Henn until his second amended complaint on February 24, 2015 (ECF No. 23) and did not name Cesarz or Martin until his third amended complaint on July 8, 2017 (ECF No. 88.) By these points, the statute of limitations had long expired. Accordingly, the Court can only entertain claims against these defendants if they "relate back" or equitable tolling applies.

### i. Relation Back

### 1. Rule 15(c)

Federal Rule of Civil Procedure 15(c) imposes the following conditions for claims against a new party to "relate back:"

> (1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party should have known that, but for a mistake of identity, the original action would have been brought against it; and . . . [4] the second and third criteria are fulfilled within 120 days of the filing of the original complaint, and . . . the original complaint [was] filed within the limitations period.

*Hogan*, 738 F.3d at 517 (citing Fed. R. Civ. P. 15(c)(1)(c)).

First, the claims against Henn, Cesarz, and Martin arise out of the same conduct as the original pleading. The second inquiry is whether Defendants received notice within 120 days of the filing of the original complaint. Rule 15 does not require "actual notice; constructive notice will suffice." *Diaz v. City of N.Y.*, No. 13-cv-8281, 2015 WL 6125586, at *2 (S.D.N.Y. Oct. 7, 2015) (collecting cases). "Under the constructive notice doctrine, the court can impute knowledge of a lawsuit to a new defendant government official through his attorney, when the attorney also represented the officials originally sued, so long as there is some showing that the attorney[ ] knew that the additional defendants would be added to the existing suit." *Abdell v. City of N.Y.*, 759 F. Supp. 2d 450, 455 (S.D.N.Y. 2010) (citations omitted). "The constructive notice doctrine is based on the theory that the newly added defendant is not prejudiced by the lack of notice if his attorney has already begun preparing a defense for the named defendant during the limitations period." *Smith v. Westchester Cnty. Dept of Corr.*, No. 07-cv-1803, 2012 WL 527222, at *5 (S.D.N.Y. Feb. 15, 2012). Because "Corporation Counsel is legally required, subject to narrow exceptions, to defend members of the New York City police department in any civil suit arising out of actions taken within the scope of their public employment," an officer's "legal entitlement to representation by Corporation Counsel is sufficient to impute Corporation Counsel's notice" of a case. *Twine v. Four Unknown New York Police Officers*, No. 10-cv-6622, 2012 WL 6184014, at *14 (S.D.N.Y. Dec. 12, 2012).

Here, the 120-day period expired on December 16, 2014. The public docket reveals that Defendants did not have actual notice by this period. The City received notice of Plaintiff's

action when it was served with the complaint on August 20, 2014—well within the 120-day statute of limitations period. (ECF No. 3.) However, Corporation Counsel did not enter an appearance on behalf of the City until February 23, 2015. (ECF No. 20.) Accordingly, Defendants did not have constructive notice through their attorney by the 120-day period. *See Velez v. Fogarty*, No. 06-cv-13186, 2008 WL 5062601, at *7 (S.D.N.Y. Nov. 20, 2008) (since "[t]here was no defense attorney in this case at any point during the limitations period . . . Corporation Counsel could not have begun preparing a defense for either defendant during the limitations period and had no reason to inform [named defendant] of this action").

With respect to the third inquiry, the Circuit has held that "failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake" within the meaning of Rule 15." *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995). "Much ink has been spilled in this circuit trying to discern whether the Supreme Court's 2010 decision in *Krupski* abrogated this holding from *Barrow*." *Diaz*, 2015 WL 6125586, at *3 n.5 (collecting cases). In *Krupski*, the Supreme Court held that "relation back under Rule 15(c)(1)(c) depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010). In the wake of *Krupski*, "[s]ome courts have continued to cite *Barrow* as authority to hold that an amended complaint substituting previously named John Does with identified defendants cannot relate back to the earlier complaint. Other courts have held that *Krupski* overrules *Barrow* to the extent that it held that Rule 15(c)(1)(C)(ii) asks what the putative defendant, and not the plaintiff, knew or should have

known." *Smith v. City of N.Y.*, 1 F. Supp. 3d 114, 120 (S.D.N.Y. 2013) (collecting cases and applying the latter view). Without explicitly addressing the issue, the Second Circuit has relied on *Barrow* in the wake of *Krupski*. *See Sewall v. Bernardin*, 795 F.3d 337, 342 (2d Cir. 2015); *Scott v. Village of Spring Valley*, 577 Fed. App'x 81, 83 (2d Cir. 2014); *Hogan v. Fischer*, 738 F.3d 509, 517-18 (2d Cir. 2013); *Southerland v. City of N.Y.*, 680 F.3d 127, 138 n.12 (2d Cir. 2012).

Here, the Court need not determine whether *Barrow* remains good law because, in any event, as discussed *supra* the named defendants did not receive actual or constructive notice within 120 days of the filing of the complaint.

## 2. State Law

Nevertheless, the Court next must consider whether the claim relates back under applicable state law—here, New York law. *See Hogan*, 738 F.3d at 518 (citing Fed. R. Civ. P. 15 Advisory Comm. Notes 1999) (Since New York law offers a "more forgiving principle of relation back" than Rule 15, "it should be available to save the claim."). Section 1024 of the New York Civil Practice Law and Rules ("CPLR") provides:

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

"New York courts have interpreted this section to permit John Doe substitutions *nunc pro tunc.*" *Hogan*, 738 F.3d at 518-19 (collecting cases). A plaintiff must meet two initial requirements: "First, the party must exercise due diligence, prior to the running of the statute of

limitations, to identify the defendant by name. Second, the party must describe the John Doe party in such form as will fairly apprise the party that [he] is the intended defendant." *Id.* at 519 (internal citations and quotation marks omitted). Then, if a plaintiff fulfills these conditions he must "ascertain the identify of unknown 'Jane Doe' parties, and . . . serve process upon them, within 120 days from filing" the original complaint. *Williams v. Suffolk Cnty.*, 284 F. Supp. 3d 275, 283 (E.D.N.Y. 2018) (quoting *Bumpus v. N.Y.C. Transit Auth.*, 66 A.D.3d 26, 31 (N.Y. 2009)). This 120-day deadline "may be extended 'upon good cause shown or in the interest of justice.'" *Id.* (quoting C.P.L.R. 305-b).

To satisfy the due diligence requirement, the plaintiff must "show that he or she made timely efforts to identify the correct party before the statute of limitations expired," such as "serving discovery demands on any known parties or seeking disclosures pursuant to a Freedom of Information Law ("FOIL") request." *Cotto v. City of N.Y.*, Nos. 15-cv-9123; 16-cv-226, 2017 WL 3476045, at *5 (S.D.N.Y. Aug. 11, 2017) (citations omitted). "Federal and New York courts have held that where there is no indication in the record that a plaintiff has exercised due diligence prior to the expiration of the statute of limitations, a plaintiff is not entitled to make use of the 'John Doe' procedure provided in CPLR § 1024." *Ceara v. Deacon*, 68 F. Supp. 3d 402, 409 (S.D.N.Y. 2014) (collecting cases).

Here, Plaintiff did not exercise due diligence. The events giving rise to his claim occurred in July 2011. He did not file his complaint until the day before the three-year statute of limitations expired. The record does not reflect any efforts by Plaintiff to identify the individual defendants in the intervening three years, such as serving "discovery demands," seeking

13

"disclosures pursuant to a Freedom of Information Law" request, or writing "letters to the Attorney General's Office." *See JCG v. Ercole*, No. 11-cv-6844, 2014 WL 1630815, at *14 (S.D.N.Y. Apr. 24, 2014) (rejecting application of § 1024 when "Plaintiff appears to have expended no efforts at all to identify the Individual Defendants . . . waiting until the statute of limitations had nearly run to file his complaint").

Even if Plaintiff had exercised due diligence, he did not serve process on any of the individual defendants until after the 120-day period. Moreover, he did not make a showing of good cause for extending that deadline, and the record does not reflect circumstances justifying an expansion of the statutory period in the interests of justice.

### ii. Equitable Tolling

"Under New York law, the doctrines of equitable tolling or equitable estoppel 'may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (quoting *Doe v. Holy See (State of Vatican City)*, 17 A.D.3d 793, 794 (N.Y. App. Div. 2005)). "'Due diligence on the part of the plaintiff in bringing [an] action,' however, is an essential element of equitable relief." *Id.* (quoting *Holy See*, 17 A.D.3d at 796). The plaintiff bears the burden of showing equitable tolling is warranted, and "[i]f a plaintiff cannot 'articulate[ ] any acts by defendants that prevented [him] from timely commencing suit' then he has 'failed to meet [his] burden of showing that [he was] wrongfully induced by defendants not to commence suit.'" *Id.* (quoting *Holy See*, 17 A.D.3d at 796).

14

Here, Plaintiff has not responded to Defendants' motion to dismiss and thus did not raise equitable tolling. Nevertheless, as discussed *supra* the record does not reflect that Plaintiff exercised due diligence or that Defendants prevented him from timely commencing suit. Accordingly, equitable tolling does not apply.

As a result, Plaintiff's false arrest and false imprisonment claims against the individual defendants are dismissed.

## II. Denial of Right to Fair Trial

Plaintiff alleges that Henn and Defendant Officers created and passed along to prosecutors incomplete, misleading, and false evidence against him, in violation of his right to a fair trial. Defendants contend that Plaintiff fails to state a claim and that, in any event, Plaintiff's claims are barred under the statute of limitations.

### A. Statute of Limitations

Denial of the right to fair trial claims accrue when a criminal prosecution is terminated. *Debosse v. City of N.Y.*, No. 13-cv-3822, 2016 WL 3647589, at *2 (E.D.N.Y. May 25, 2016). Here, the charges against Plaintiff were dismissed on March 1, 2012. *See* TAC ¶ 28. Thus, the statute of limitations expired March 1, 2015. Plaintiff did not name Cesarz or Martin[3] until July 8, 2017 (ECF No. 88) and accordingly his claims are barred under the statute of limitations unless they relate back or equitable tolling applies. For the reasons discussed above, the

---

[3] This Court previously granted summary judgment in favor of Henn on the malicious prosecution and fair trial claims. (*See* ECF No. 45 at 13.)

complaint does not relate back and equitable tolling is inapplicable here. Accordingly, Plaintiff's right to fair trial claims against the individual defendants are dismissed

## III.  Malicious Prosecution

Plaintiff alleges that Henn, Martin, Cesarz, and/or other Defendant Officers maliciously prosecuted Plaintiff by knowingly withholding exculpatory evidence and by preparing and/or signing an accusatory instrument which they knew to be incomplete, misleading, and false. Defendants argue that Plaintiff's malicious prosecution claim is barred by the statute of limitations. Further, Defendants assert that they cannot be liable as they did not "initiate" the criminal prosecution—the criminal complaint was sworn out by the complaining witness, Gerard Jones. *See* Criminal Complaint.[4]

### A.  Statute of Limitations

The statute of limitations for a malicious prosecution claim "begins to run when the criminal proceedings in question terminate in the plaintiff's favor." *Smith v. City of N.Y.*, 1 F. Supp. 3d 114, 119 (S.D.N.Y. 2013) (citing *Heck v. Humphrey*, 512 U.S. 477, 489 (1994)). Plaintiff's malicious prosecution claim thus expired on March 1, 2015—three years after the prosecution terminated. Accordingly, for the same reasons adduced above Plaintiff's malicious prosecution claims against the individual defendants are dismissed as untimely under the statute of limitations.

---

[4] The Court may take judicial notice of the criminal complaint. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

## IV.    Municipal Liability

A municipality "can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978)). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its employee." *Id.* (citations omitted). "In other words, a municipality may not be found liable simply because one of its employees committed a tort." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)). "Instead, there must be a 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 637 (S.D.N.Y. 2015) (quoting *City of Canton v. Harris*, 489 U.S. 378, 3885 (1989)). Ultimately "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." *Roe*, 542 F.3d at 37 (quoting *Brown*, 520 U.S. at 404).

A plaintiff can show a "policy or custom" by alleging the existence of one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Harris v. City of N.Y.*, 222 F. Supp. 3d 341, 352 (S.D.N.Y. 2016) (citations omitted).

17

Generally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 532 (S.D.N.Y. 2012) (collecting cases).

Even at the motion to dismiss stage, a plaintiff "cannot merely allege the existence of a municipal policy or custom, but 'must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists.'" *Id.* at 535 (collecting cases). Courts have routinely dismissed complaints that contain "quintessentially boilerplate language echoing the requirements contained in *Monell*." *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 302 (S.D.N.Y. 2015) (collecting cases.)

Here, Plaintiff alleges the following policies or customs:

> 1) arresting persons known to be innocent in order to meet 'productivity goals'; 2) falsely swearing out criminal complaints and/or lying and committing perjury during sworn testimony to protect other officers and meet productivity goals; 3) failing to supervise, train, instruct and discipline police officers thereby encouraging their misconduct and exhibiting deliberate indifference towards the constitutional rights of persons within the officers' jurisdiction; 4) discouraging police officers from reporting the corrupt or unlawful acts of others; 5) retaliating against officers who report police misconduct; and 6) failing to intervene to prevent the above-mentioned practices when they reasonably could have been prevented with proper supervision.

TAC ¶ 82.

Plaintiff's boilerplate allegations fail to state a claim for *Monell* liability. First, Plaintiff has not alleged facts sufficient to show a policy of arresting innocent persons in order to meet "productivity goals." Even if Plaintiff stated such a claim, his allegation that "the custom of fulfilling quotas is alleged to have led to a misleading, incomplete forwarding of information about Mr. Culpepper to police supervisors and the district attorney's office which led to the

18

arrest and prosecution of Mr. Culpepper," TAC ¶ 84, is insufficient to show that the alleged

policy was the "motivating factor" behind Plaintiff's arrest. Here, an alleged victim swore out a

criminal complaint asserting that Plaintiff shot him. *See* Criminal Complaint. Moreover,

Plaintiff does not allege that the Defendant Officers knew he was innocent.

Second, Plaintiff has not sufficiently alleged the existence of a policy to swear out false

criminal complaints or commit perjury. Moreover, as this Court previously held, any such policy

would be irrelevant since Plaintiff did not allege that any officer swore out a criminal complaint

or gave sworn testimony. *See* ECF No. 45 at 15. While the TAC alleges that Defendant Officers

"prepared paperwork, including an accusatory instrument, and other police documents which

created a false, complete and misleading account of the events," TAC ¶ 41, the criminal

complaint was prepared by the alleged victim—not by any of the defendants. *See* Criminal

Complaint. The TAC does not provide any other specific allegations of sworn testimony.

Third, Plaintiff does not plausibly allege a policy of failure to supervise, train, instruct,

and discipline officers or of failure to intervene to prevent the alleged abuses. Such failures

constitute a municipal custom "only where the need to act is so obvious, and the inadequacy of

current practices so likely to result in a deprivation of federal rights, that the municipality or

official can be found deliberately indifferent to the need." *Reynolds v. Giuliani*, 506 F.3d 183,

192 (2d Cir. 2007) (citing *City of Canton*, 489 U.S. at 387). To state a claim, a "plaintiff must

show (1) that a policymaker knows 'to a moral certainty' that her employees will confront a

given situation; (2) that the situation either presents that employee with a difficult choice of the

sort that training or supervision will make less difficult or that there is a history of employees

mishandling the situation; and (3) that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Rodriguez v. City of N.Y.*, 649 F. Supp. 2d 301, 307 (S.D.N.Y. 2009) (quoting *Walker v. City of N.Y.*, 974 F. 2d 293, 297-98 (2d Cir. 1992)). Additionally, "a single instance of government inaction is generally insufficient to establish the existence of a policy of inadequate training, unless that single instance was the decision of the municipal policymaker himself." *Id.* at 308 (internal citations omitted).

Plaintiff alleges that Defendants were "on notice" of the unconstitutional conduct alleged in the complaint and that "the need for more effective supervision and other remedial measures was patently obvious," yet Defendants "made no meaningful attempt to prevent future constitutional violations." TAC ¶ 83. A policy of failing to train officers on how to properly investigate crimes could be a cause of a false arrest such as that alleged here. However, Plaintiff's general allegations of one instance of misconduct by individuals who were not "the municipal policymaker himself" are insufficient to state a claim for failure to train, supervise, instruct, discipline, or intervene. *See Rodriguez*, 649 F. Supp. 2d at 308.

Finally, Plaintiff's complaint is devoid of any non-conclusory allegations of a policy to discourage officers from reporting wrongful conduct or that any officer reported misconduct or suffered retaliation for doing so.

Accordingly, Plaintiff's *Monell* claims are dismissed.

## V. Failure to Intervene

Plaintiff alleges that Henn and/or Defendant Officers failed to intervene to protect his constitutional rights. An officer "has an affirmative duty to intercede on the behalf of a citizen

whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) (collecting cases). An officer is only liable for failure to intervene if "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing *O'Neill*, 839 F.2d at 11-12). "An underlying constitutional violation is an essential element of a failure to intercede claim under § 1983." *Henry-Lee v. City of N.Y.*, 746 F. Supp. 2d 546, 566 (S.D.N.Y. 2010) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997)).

Here, as discussed *supra* Plaintiff has not stated a claim for any underlying constitutional violation. Accordingly, his failure to intervene claim must be dismissed.

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Clerk of Court is respectfully requested to terminate the motion at ECF No. 99 and to close this case.

**SO ORDERED.**

**Dated:** April 20, 2018

        **New York, New York**

                                             **ANDREW L. CARTER, JR.**

                                          **United States District Judge**